## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SUSAN BARON,                          :
                                      :
                   Plaintiff,         :
                                      :
        v.                            :        Civil Action No. 11-2046 (RC)
                                      :
ERICA DULINSKI, *et al.*,             :
                                      :
                   Defendants.        :


## <u>MEMORANDUM OPINION</u>

This matter is before the Court on the defendants' Motion to Dismiss [Dkt. #7], and the

plaintiff's Request for Order for Direct Deposit as Accommodation Under Title III [of the]

American[s] with Disabilities Act [as] Amended [Dkt. #9] and Request for Contempt and

Sanctions Order [Dkt. #13].[1]  For the reasons discussed below, the defendants' motion will be

granted and the plaintiff's motions will be denied.


### I.  BACKGROUND

On August 15, 2002, while working as a paralegal for her former employer MPS Group,

the plaintiff "sustained a traumatic injury to her jaw, which was dislocated when she struck her

chin while lifting a box of documents."  Compl., Ex. (Compensation Order dated February 16,

2010) at 2.  She had been "awarded certain benefits, including temporary disability and medical

benefits as a result of this injury."  *Id.*  In 2010, the plaintiff requested and was awarded

"additional medical benefits for tinnitus," *id.*, a condition found to be medically causally related

---

[1]      The plaintiff's motion for entry of default judgment [Dkt. #12] is denied.  Crawford &
Company and Broadspire were served on January 11, 2012, and their response to the Complaint,
namely the motion to dismiss [Dkt. #12], was timely filed on February 1, 2012.

to the August 15, 2002 injury, *id.* at 9.[2]   The plaintiff has experienced dizzy skills and has

fainted, events which, in turn, "result in dangerous conditions and more injuries."  Compl. at 7.

According to the plaintiff, what began as "Temporary Total Disability" in 2002 has become

"long term, and now [she has] permanent disabilities, injuries, symptoms and side effects."  *Id.* at

3; *see id.* at 10.

It appears that MPS Group engaged Broadspire, a subsidiary of Crawford & Company

(collectively, "the defendants"), to manage its disability, medical and workers' compensation

claims.[3]  *See id.* at 2.  The plaintiff alleges that, as "third-party claims administrators," the

defendants "are generally given the power to both administer a claim and make a determination

as to whether a disability claimant should be paid benefits each month."  *Id.*  The defendants

make payments in the form of paper checks pursuant to a policy "that no injured or disabled

workers have access to direct deposit."  *Id.* at 6; *see id.* at 7.  Consequently, the plaintiff is

subject to the inherent delay in the delivery of paper checks by regular mail, the inconvenience

of making multiple trips to the post office "looking for late checks," the "risk of fainting on 'bad

days,'" and fees assessed by the bank for cashing the checks.  *Id.* at 8-9.

The plaintiff brings this action under Titles I and III of the Americans with Disabilities

Act ("ADA"), *see id.* at 1, alleging that the defendants have denied her "direct deposit . . .  as an

accommodation under ADA."  *Id.* at 5.  Notwithstanding her many requests for direct deposit,

she alleges that the defendants discriminate against her on the basis of her disability by refusing

---

[2]   The plaintiff was prescribed medication to treat pain in her neck and jaw caused by the injury sustained on August 15, 2002, and apparently experienced some hearing loss and tinnitus as a side-effect of that medication.  *See generally* Compl., Ex. (Compensation Order) at 2-9.

[3]   The plaintiff also names Erica Dulinski, identified as a "claims manager/employee of Broadspire/Crawford in charge of making decisions [regarding the plaintiff's] claim, Compl. at 2, as a defendant to this action.  Ms. Dulinski has not been personally served with process, *see* Process Return and Receipt [Dkt. #6], and she will be dismissed without prejudice as a party to this action.

to make payments via direct deposit.  *See id.* at 6.  She further alleges that the defendants have

retaliated against her for having made such requests.  *See id.* at 9.  Among other relief, the

plaintiff demands injunctive relief in the form of direct deposit of benefits to her account.  *See id.*

at 10-11.

## II.  DISCUSSION

### A.  Dismissal Under Rule 12(b)(6)

A plaintiff need only provide a "short and plain statement of [his] claim showing that [he

is] entitled to relief," Fed. R. Civ. P. 8(a)(2), that "give[s] the defendant fair notice of what the . .

. claim is and the grounds upon which it rests."  *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (per

curiam) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)) (internal quotation

marks omitted).  "A motion to dismiss under Rule 12(b)(6) tests not whether the plaintiff will

prevail on the merits, but instead whether the plaintiff has properly stated a claim."  *Woodruff v.

DiMario*, 197 F.R.D. 191, 193 (D.D.C. 2000).  In considering such a motion, the "complaint is

construed liberally in the plaintiffs' favor, and [the Court] grant[s] plaintiff[] the benefit of all

inferences that can be derived from the facts alleged."  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d

1271, 1276 (D.C. Cir. 1994).  However, "the [C]ourt need not accept inferences drawn by

plaintiff[] if such inferences are unsupported by the facts set out in the complaint."  *Id.*  Nor must

the Court accept "a legal conclusion couched as a factual allegation," nor "naked assertions

devoid of further factual enhancement."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal

quotation marks and citation omitted).

A complaint survives a motion under Rule 12(b)(6) only if it "contain[s] sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.*  A claim is

facially plausible "when the plaintiff pleads factual content that allows the [C]ourt to draw [a]

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[A] complaint [alleging] facts that are merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 557). Although a *pro se* complaint is "held to less stringent standards than formal pleadings drafted by lawyers," *Erickson,* 551 U.S. at 94 (internal quotation marks and citation omitted), it too "must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct,'" *Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678-79), by the defendants.

### B.  The Plaintiff's Disability

For purposes of the ADA, the term "disability" means:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment . . . .

42 U.S.C. § 12102(1). Working is considered a major life activity. *Id.* § 12102(2)(A). The plaintiff alleges, *see* Compl. at 1-2, and the defendants do not dispute, *see generally* Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem.") at 2-5, that the plaintiff has a disability.

### C.  The Plaintiff Fails to State a Claim Under Title I of the ADA

Generally, Title I of the ADA provides that "[n]o <u>covered entity</u> shall discriminate against a <u>qualified individual</u> on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (emphasis added). The defendants move to dismiss the plaintiff's Title I claim on the grounds that (1) they are not

covered entities, and (2) the plaintiff is not a qualified individual.  *See generally* Defs.' Mem. at 2-4.

### 1.  The defendants are not "covered entities."

For purposes of Title I, the term "covered entity" means "an employer, employment agency, labor organization, or joint labor management committee." 42 U.S.C. § 12111(2).  A defendant can only be sued under Title I if it is a covered entity.  *See Beaird v. Gonzales*, 495 F. Supp. 2d 81, 83 n.2 (D.D.C. 2007) (noting that plaintiff failed to state a proper ADA claim because the federal government is not an employer subject to the ADA).

The plaintiff does not allege that either defendant is or was her employer, or otherwise fits the description of an employment agency, labor organization or joint labor management committee.  The defendants describe themselves as "third party administrators on behalf of insurance companies with respect to the evaluation and payment of worker's compensation benefits."  Mot. to Dismiss [Dkt. #7] ¶ 8.  They argue that "[n]either an insurance company, nor a third party administrator, is a covered entity" for purpose of Title I, and for this reason "neither company is an employer with respect to [the plaintiff]."  *Id.* ¶ 9.  The Court concurs, and the plaintiff concedes this point.  *See* Pl.'s Mem. of P. & A. in Supp. of Mot. to Dismiss ("Pl.'s Opp'n") [Dkt. #11] at 12-1 ("Plaintiff does not claim that Defendants in this matter are covered under Title I.").

### 2.  The plaintiff is not a "qualified individual."

The term "qualified individual" means "an individual who, with or without reasonable accommodation, <u>can perform the essential functions of the employment position that such individual holds or desires</u>." 42 U.S.C. § 12111(8) (emphasis added).   The plaintiff states that she was declared temporarily totally disabled in 2002, and that she now is permanently disabled.

*See* Compl. at 3, 7-8.  Although she initially "had an acute and recoverable . . . injury," it allegedly has "become chronic, then permanent."  *Id.* at 10.  Based on these representations, the plaintiff neither can perform the essential functions of, nor desires reinstatement to, her former position at MPS Group, with or without a reasonable accommodation.  "A totally disabled person who cannot perform the essential functions of the employment position with or without reasonable accommodations thus cannot be a qualified individual entitled to sue under Title I of the Act."  *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1108 (9th Cir. 2000) (citation and internal quotation marks omitted); *Fitts v. Fed. Nat'l Mortgage Ass'n*, 44 F. Supp. 2d. 317, 322-23 (D.D.C. 1999), *aff'd on other grounds*, 236 F.3d 1, 2 (D.C. Cir. 2001).  The plaintiff's Title I claim therefore must be dismissed.

### D.  The Plaintiff Fails to State a Claim Under Title III of the ADA

Title III prohibits discrimination based on disability "in the full and equal enjoyment of the goods, services . . . or accommodations of any place of public accommodation by any person who . . . operates a place of public accommodation." 42 U.S.C. § 12182(a).  A public accommodation includes an "insurance office," *id.* § 12181(7)(F), and the defendants concede that the ADA covers "access to such office, and the procurement of insurance."  Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem.") [Dkt. #7-1] at 4.  Because the defendants engage in "the act of adjusting insurance claims," however, they dispute the plaintiff's assertion that they are subject to Title III of the ADA.[4]  *Id.*

---

[4]      Alternatively, the defendants argue, *see* Def.'s Mem.at 5, that the ADA does not apply in that it "shall not be construed to prohibit or restrict . . . an insurer . . . or entity that administers benefit plans, or similar organizations from . . . administering . . . risks that are based on or not inconsistent with State law."  42 U.S.C. § 12201(c).

Title III certainly covers physical places of public accommodation.  *See Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) ("All the items [listed in 42 U.S.C. § 12181(7)], however, have something in common. They are actual, physical places where goods or services are open to the public, and places where the public gets those goods or services."); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1010-12 (6th Cir. 1997) (en banc) (finding that employee who obtained long-term disability insurance through her employer "did not access her policy from MetLife's insurance office," and thus the disability plan "is not a service offered by a place of public accommodation"); *see also Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532, 543  (E.D. Va. 2003) ("[I]t appears that the weight of authority endorses the 'actual physical structure' requirement in the ADA context as well.").   Title III's protections extend beyond physical access to insurance offices and prohibit discrimination based on disability in the enjoyment of the goods and services made available at a place of public accommodation.  *See Carparts Distrib. Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 19 (1st Cir. 1994) (finding that public accommodation "is not limited to actual physical structures" and may include access to insurance plans); *Wai v. Allstate Ins. Co.*, 75 F. Supp. 2d 1, 9 (D.D.C. 1999) (holding that "Title III's protections extend beyond physical access to insurance offices" and allowing a claim alleging the  "denial of insurance policies that are equal or comparable to those offered to persons who are neither disabled nor associated with disabled persons" to proceed).

The plaintiff does not allege that she is denied physical access to the defendants' offices, or that she is denied products and services offered to the general public by the defendants based on her disability, or that she is otherwise denied the full and equal enjoyment of the goods and services offered by the defendants based on her disability.  Rather, the plaintiff objects to the

method by which the defendants make payments to her.  Nowhere does the plaintiff allege that

the defendants issue paper checks rather than make direct deposits to her bank account based on

her disability.  Nor does the plaintiff point to any statute or regulation which requires the

defendants to make payments using the method the plaintiff prefers.[5]  Title III does not reach the

terms of the policies offered by an insurer.  *See Chabner v. United of Omaha Life Ins. Co.*, 225

F.3d 1042, 1047 (9th Cir. 2000); *McNeil v. Time Ins. Co.*, 205 F.3d 179, 188 (5th Cir. 2000) ("In

sum, we read Title III to prohibit an owner, etc., of a place of public accommodation from

denying the disabled access to the good or service and from interfering with the disableds' full

and equal enjoyment of the goods and services offered.  But the owner, etc., need not modify or

alter the goods and services that it offers in order to avoid violating Title III."); *Ford v. Schering-*

*Plough Corp.*, 145 F.3d 601, 612 (3d Cir. 1998) ("The fact that an insurance office is a public

accommodation, however, does not mean that the insurance policies offered at that location are

covered by Title III."); *Parker*, 121 F.3d at 1012 (finding that Title III does not regulate content

of goods and services).  In other words, "Title III of the ADA does not govern the content or

terms of an insurance policy, nor permit court modification of the terms and conditions offered

therein,"  *Morrison v. Unum Life Ins. Co. of Am.*, No. 06-2400, 2008 WL 4224807, at *5 (W.D.

La. Sept. 10, 2008).  The plaintiff alleges that the general public, the defendants' employees, and

her former employer's employees have access to direct deposit, but she does not.  But she is

presumably referring to payroll direct deposit.  She does not allege that the defendants administer

---

[5]     Furthermore, the District of Columbia's Department of Employment Services, Office of
Workers' Compensation, has determined that it "does not have the authority to ORDER the
insurer to direct deposit the [plaintiff's] compensation payments," and has found that the
plaintiff's compensation benefits are being properly made and issued."  Defs.' Opp'n to Pl.'s
Mot. for Order for Direct Deposit as Accommodation Under ADA [Dkt. #10], Ex.
(Memorandum of Informal Conference, OWC No. 582146, dated January 29, 2012) at 2.

insurance claims for healthy employees who receive direct deposit, but refuse to provide direct deposit for disabled workers' compensation claimants.

The plaintiff does not state a claim under Title III of the ADA upon which relief can be granted, and the claim therefore will be dismissed.

## III.  CONCLUSION

The Court concludes that the plaintiff fails to state claims under Title I and III of the ADA, and, accordingly, the defendants' motion  to dismiss will be granted.  The plaintiff's motions will be denied.  An Order accompanies this Memorandum Opinion.


/s/

DATE: March 4, 2013                    RUDOLPH CONTRERAS
                                       United States District Court Judge